# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

### No. 22-4080

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Memorandum Response Brief Opposing Bail Pending Appeal** |
| **v.** | |
| **ANGELA GRIFFIN** | |

The United States of America, by and through its undersigned counsel, respectfully files this response in opposition to Defendant Angela Griffin's appeal of the denial of her motion for release pending appeal.  As set forth more fully below, the district court properly found that Griffin's appeal failed to "raise[] a substantial question of law or fact likely to result in: (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  18 U.S.C. § 3143(b)(1)(B).

## Background

On August 19, 2020, Angela Griffin and a dozen others were named in a 50-count second superseding indictment for their involvement in a multi-year fraud scheme and related crimes.  D.E.[1] 79; D.E. 338 at ¶¶ 16–67.  Griffin was charged with two counts of bank fraud and aiding and abetting, in violation of

---

[1]   "D.E." refers to the docket entries in the district court, case number 5:19-cr-346-BO.

18 U.S.C. §§ 1344 and 2 (Counts 13 and 15); aggravated identity theft and aiding and abetting, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2 (Count 40), and perjury, in violation of 18 U.S.C. § 1623 (Count 47). D.E. 79 at 15–19, 23–25, 28–29. Griffin was arrested on September 10, 2020. D.E. 128. She remained in custody until September 16, 2020, when she was released on conditions. *See* D.E. 144, 187.

On June 22, 2021, Griffin entered into a plea agreement where she agreed to plead guilty to Count 13 (bank fraud). D.E. 275 1, 7. In the agreement, Griffin promised:

> ***To waive knowingly and expressly the right to appeal the conviction and whatever sentence is imposed on any ground***, including any appeal pursuant to 18 U.S.C. § 3742, and further to waive any right to contest the conviction or the sentence in any post-conviction proceeding, including any proceeding under 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea.

D.E. 275 at 1 (emphasis added). The plea agreement set forth the charge, code section, elements, and applicable penalties for Count 13. D.E. 275 at 4–6. It included a provision wherein Defendant acknowledged:

> That the Court will take into account, but is not bound by, the applicable United States Sentencing Guidelines, that the sentence has not yet been determined by the Court, ***that any estimate of the sentence received from any source is not a promise,*** and that even if a sentence up to the statutory maximum is imposed, the Defendant may not withdraw the plea of guilty.

2

D.E. 275 at 4–5 (emphasis added). Among other things, the government agreed to dismiss at sentencing Counts 15, 40, and 47 as to Griffin only. D.E. 275 at 6. Count 40 (aggravated identity theft) carried a mandatory, consecutive two-year sentence. 18 U.S.C. § 1028A; D.E. 338 at ¶ 107.

On July 1, 2021, Griffin appeared before the court for her Rule 11 hearing. D.E. 307. Griffin told the court that she intended to plead guilty, had enough time to meet with her lawyer and prepare for the hearing, and was satisfied with her attorney's work. D.E. 307 at 3–4. The court told Griffin that Count 13 carried punishment of up to 30 years in prison, a fine, and supervised release. D.E. 307 at 5. The court confirmed that Griffin voluntarily entered into a written plea agreement with the government and that, among other things, she waived her right to appeal in the plea agreement. D.E. 307 at 5–6. Griffin pleaded guilty to Count 13 and acknowledged that she was, in fact, guilty. D.E. 307 at 6. After the government provided a factual basis supporting the plea, D.E. 307 at 7–11, the court accepted Griffin's guilty plea and approved the parties' plea agreement, D.E. 307 at 11; D.E. 275 at 7. Government counsel did not move for detention, and the court continued Griffin on conditions of release. D.E. 307 at 11.

Following her guilty plea, the United States Probation Office conducted a presentence investigation and prepared Griffin's presentence investigation report. D.E. 338. The PSR described the offense conduct in detail. D.E. 338 at ¶¶ 16–69. It also provided information on her medical history, including past knee replacement, severe arthritis, and other issues. D.E. 338 at ¶ 81. Griffin's

advisory guidelines range was 10 to 16 months' imprisonment, based on a total offense level of 12 and criminal history category of I. D.E. 338 at ¶ 106. The PSR advised that Griffin was not eligible for probation because the offense is a Class B felony. D.E. 338 at ¶ 111. There were no objections to the PSR. D.E. 338 at 28.

At her sentencing hearing on October 22, 2021, Griffin apologized for breaking the law and noted that she had "never been in any trouble before in my life and I don't plan on being in any more ever again." D.E. 448 at 2. Defense counsel confirmed that there were no objections to the PSR and then argued that "a period of supervision is appropriate." D.E. 448 at 2–6. Defense counsel discussed Griffin's commitment to her family, the arthritis and other health concerns "that are part of her life," her role in running the family's "legal business" Cash Out, her minimal criminal history, and her "fairly small" involvement in the illegal schemes orchestrated by her husband. *See* D.E. 448 at 3–6. Although defense counsel believed "a period of supervision is appropriate," he recognized that the court may "be inclined to order her to a term of imprisonment." D.E. 448 at 6. Defense counsel argued that any such term should not be lengthy because Griffin "has people that depend on her" and that "there's a business that will also depend on her because obviously [her husband] will be going away for a few years." D.E. 448 at 6.

The court asked defense counsel a few questions about Cash Out, a sweepstakes, before remarking:

4

> What I was trying to get at was that her husband's just a notorious thief and crook and you're telling me that she had nothing to do with it. . . . I mean, it's hard to believe that he could have done all this without her being integrated into it.

D.E. 448 at 7. The court noted that other family members were involved in the theft. D.E. 448 at 8. When defense counsel emphasized that it was her husband's family members, not hers, the court elicited that Griffin and her husband had been married for more than three decades. D.E. 448 at 8.

Government counsel agreed that this was a family affair and noted that Griffin and her husband also involved one of their adult children in their illegal activities. D.E. 448 at 9–11. Government counsel rejected the notion that she was "somehow totally oblivious to all this criminal conduct going on around her," discussed the count of conviction and dismissed charges, and emphasized that she obstructed justice by lying in the grand jury. D.E. 448 at 10–11. Government counsel asked for a sentence within her advisory guidelines range. D.E. 448 at 11–12.

The court imposed a sentence of 12 months' imprisonment and five years' supervised release, and it allowed her to self-report to her designated facility by January 15, 2022. D.E. 448 at 12. Defense counsel alerted the court that "she does have six days' credit," and the court responded that "[s]he'll get that." D.E. 448 at 12. The judgment and an accompanying order reflected that Griffin would continue on conditions of release and surrender to the U.S. Bureau of Prisons by reporting to her designated institution not later than 2:00 p.m. January 15, 2022. D.E. 381; D.E. 380 at 2.

On January 5, 2022, ten days before her designated reporting date, Griffin moved for bond pending appeal. D.E. 445. Griffin noted that she had been released on conditions "for 15.5 months without incident and there is no serious contention that she is a flight risk of danger." D.E. 445 at 1. Griffin stated that her appeal would "raise substantial issues of law and fact regarding her active sentence." D.E. 445 at 1. Griffin's primary concern on appeal would be "her lawyer's deficient advice that the plea agreement would result in a probationary sentence," only to learn "at sentencing . . . that the probationary sentence she anticipated was legally impossible under 18 U.S.C. § 3561(a)(1)." D.E. 445 at 4. Griffin also forecasted that she would argue that her Rule 11 hearing was deficient because she was not told that § 3561(a)(1) mandates a sentence of active imprisonment. D.E. 445 at 4–5.

In an affidavit accompanying her motion, Griffin stated: "In discussing the government's plea offer and pleading guilty versus going to trial with my lawyer, my lawyer advised me that the most likely result in my case was that I would receive a probationary sentence." D.E. 445-1 at 1. She stated that no one advised her that she was not eligible for a probationary sentence or that she "had to serve an active sentence of imprisonment for the bank fraud if . . . convicted." D.E. 445-1 at 1. She acknowledged that she discussed with counsel a significant benefit of the proposed plea agreement—no longer being exposed to an aggravated identity theft charge that carried a mandatory, consecutive two years' imprisonment. *See* D.E. 445-1 at 1.

In denying Griffin's request for release pending appeal, the district court concluded that Griffin "failed to demonstrate that her appeal raises a substantial question of law or fact likely to result in a different outcome." D.E. 447 at 2. The court noted that ineffective assistance of counsel claims are not cognizable on direct appeal unless "ineffectiveness conclusively appears from the record." D.E. 447 at 2 (citation omitted). The court highlighted that Griffin's plea agreement "plainly states that any sentencing estimate received from any source is not a promise" and that she was advised at her Rule 11 hearing of the possible penalties. D.E. 447 at 2. The court noted that, while the Fourth Circuit has not ruled on the issue, at least one circuit has rejected the notion that being ineligible for probation is a mandatory minimum penalty within the meaning of Rule 11(b)(1). *See* D.E. 447 at 2–3; *United States v. Ladue*, 866 F.3d 978, 981 (8th Cir. 2017). The court was not persuaded that any of these issues presented "close" questions or ones that could very well be decided in her favor. D.E. 447 at 2–3.

## Legal Standard

Congress enacted the Bail Reform Act of 1984 to "make[] it considerably more difficult for a defendant to be released on bail pending appeal." *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985) (noting that the changes Congress made in the Act were "designed to toughen the law with respect to bail pending appeal"). Current law, codified in 18 U.S.C. § 3143(b)(1), sets out the default rule that courts "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal

or a petition for a writ of certiorari, be detained." To overcome that presumption and win release pending appeal, a defendant has the burden to show, among other things, that her appeal "raises a substantial question of law or fact likely to result in reversal, an order for a new trial," a non-incarceration sentence, or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process. 18 U.S.C. § 3143(b)(1)(B). Under Circuit precedent, a "substantial question of law" is a "close" question or "one that very well could be decided the other way." *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991) (per curiam) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985) (per curiam)).

Moreover, § 3143(b)(1)(A) requires that a defendant seeking bond pending appeal must also establish "by clear and convincing evidence that [she] is not likely to flee or pose a danger to the safety of any other person or the community if released." *See also* Fed. R. Crim. P. 46(c) (clarifying that, pending appeal, "[t]he burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant.").

Finally, 18 U.S.C. § 3145(c), which governs appeals from detention orders, clarifies that certain defendants may be released if, in the court's judgment, "there are exceptional reasons why such person's detention would not be appropriate," and the defendant otherwise "meets the conditions of release set forth in section 3143(b)(1)." In other words, a defendant claiming such "exceptional circumstances" must still establish that her appeal raises a substantial question of law or fact under § 3143(b)(1)(B), and present clear and

8

convincing evidence under § 3143(b)(1)(A) that she is not likely to endanger the community or flee while released on bond.

## Discussion

Griffin's memorandum brief fails to identify any issue that would raise a substantial question likely to result in reversal, an order for a new trial, a sentence of no incarceration, or sentence of imprisonment less than the anticipated appeal process. The district court appropriately denied her request for release pending appeal. D.E. 447.

### 1. Griffin is not likely to prevail on her ineffective assistance of counsel claim based on defense counsel's sentencing forecast.

According to Griffin, her primary concern on appeal is the "misinformation given her that her [guilty plea to Count 13] would result in a probationary sentence." Mem. Br. at 8. She contends that this amounted to ineffective assistance of counsel because probation was not an option for her conviction of a Class B felony. *See id.* at 10–11. But an ineffective assistance of counsel claim is not cognizable on a defendant's direct appeal of a criminal judgment, unless "it conclusively appears from the record that [defense] counsel did not provide effective assistance." *United States v. Martinez*, 136 F.3d 972, 979 (4th Cir. 1998); *see also United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010).

Under *Strickland*, Defendant must first show "'that counsel's performance fell below an objective standard of reasonableness.'" *Sharpe v. Bell*, 593 F.3d

372, 382 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). "Judicial scrutiny of counsel's performance must be highly deferential, and a reviewing court must avoid the biases of hindsight." *Id.* (internal quotation marks and citation omitted). Second, Defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A defendant must satisfy both prongs of *Strickland*, and a failure of proof on either prong ends the matter. *See Williams v. Kelly*, 816 F.2d 939, 946-47 (4th Cir. 1987).

Griffin's primary support for this argument is a self-serving affidavit in which she claims, "I entered into my plea agreement and pled guilty to bank fraud believing my lawyers advice that the most likely outcome would be probation." *See* D.E. 445-1 at 2. The crux of Griffin's complaint seems to be that based on her attorney's advice she did not anticipate having to spend any more time in custody—beyond the six days after she was arrested—if she took the plea agreement. The district court could have imposed a sentence of time served and supervised release, which would have aligned with her expectation that she would not go to prison. Defense counsel may well have predicted an outcome along those lines.[2] He advocated at sentencing for "a period of supervision," as opposed to imprisonment, and reminded the court of the six

---

[2] We note that two of Griffin's codefendants received a sentence of time served plus a period of supervised release. D.E. 446 at 2.

days she had previously served in connection with these charges.  D.E. 448 at 6, 12.

But Griffin certainly was aware that the district court could impose up to the statutory maximum.  Afterall, the penalties for Griffin's conviction were detailed in the plea agreement, D.E. 275 at 5, and during her Rule 11 hearing, D.E. 307 at 5.  The plea agreement specifically included a provision where Griffin recognized that the district court had not yet determined her sentence, "that any estimate of the sentence received from any source is not a promise, and that even if a sentence up to the statutory maximum is imposed, [she] may not withdraw the plea of guilty."  D.E. 275 at 5.  Griffin represented under oath that she understood these penalties and her plea agreement.

Griffin cannot demonstrate that she was prejudiced by her attorney's sentencing projection.  She pleaded guilty knowing the district court could sentence her up to the statutory maximum.  Even now Griffin has not asserted that she wants to withdraw her guilty plea, be released from her obligations under the plea agreement, and go to trial on the four charges against her.  Given the benefits she obtained under the plea agreement, including dismissal of the aggravated identity theft count, Griffin cannot show a reasonable probability that she would have opted for trial on the charges against her.

11

**2.    Griffin will not be able to demonstrate that the court plainly erred during the Rule 11 proceeding by failing to advise her that she was ineligible for probation.**

Griffin forecasts that she also intends to argue on appeal that her Rule 11 hearing was defective because she was not advised that she was ineligible for probation.  Mem. Br. at 9–10.  Griffin did not object at her Rule 11 hearing or move to withdraw her guilty plea; accordingly, this argument is reviewed only for plain error.  *See* Fed. R. Crim. P. 52(b).  Griffin cannot meet this rigorous standard of review.

Under Rule 11, a district court "must inform the defendant of, and determine that the defendant understands . . . any mandatory minimum penalty."  Fed. R. Crim. P. 11(b)(1)(I).  The Advisory Committee Notes to the 1974 amendment adding the "mandatory minimum penalty" language explained:

> The objective is to insure that a defendant knows what minimum sentence the judge **must** impose and what maximum sentence the judge **may** impose.  This information is usually readily ascertainable from the face of the statute defining the crime, and thus it is feasible for the judge to know specifically what to tell the defendant.  Giving this advice tells a defendant the shortest mandatory sentence and also the longest possible sentence for the offense to which he is pleading guilty.

In other words, the court must tell defendants about minimum sentences that it *must* impose, not sentences it *cannot* impose (like probation in the case of certain classes of felonies).  The district court did not err because Griffin did not face a mandatory minimum sentence as understood by Rule 11(b)(1)(I).

Assuming that the district court was obligated to advise Griffin that she was ineligible for probation, that certainly was not a clear or obvious error. Griffin has identified no Fourth Circuit opinion requiring defendants to be so informed at their Rule 11 hearings. And the one case she identified rejected the argument. *See United States v. Ladue*, 866 F.3d 978, 981 (8th Cir. 2017).

The error is also not obvious because the Fourth Circuit and other Courts of Appeals have considered or upheld sentences of probation for bank fraud without comment. *See United States v. Boutcher*, 998 F.3d 603, 605 (4th Cir. 2021) (conspiracy to commit bank fraud under 18 U.S.C. § 1349, which carries the same statutory maximum as bank fraud); *United States v. Puzzanghera*, 97 F.3d 1450 (4th Cir. 1996) (unpublished) (bank fraud); *United States v. Bailes*, 944 F.2d 902 (4th Cir. 1991) (unpublished) (same); *Toure v. Ashcroft*, 400 F.3d 44, 46 (1st Cir. 2005) (same); *United States v. Brady*, 417 F.3d 326, 328 (2d Cir. 2005) (same); *United States v. Mendez-Guzman*, 69 F. App'x 657, 657 (5th Cir. 2003) (same); *United States v. Tronca*, 93-2244, 1993 WL 525872, at *1 (7th Cir. Dec. 17, 1993) (unpublished) (same). *United States v. Spero*, 382 F.3d 803, 803 (8th Cir. 2004) (same); *United States v. Lorenzini*, 71 F.3d 1489, 1490 (9th Cir. 1995) (same); *United States v. Hobbs*, 981 F.2d 1198, 1199 (11th Cir. 1993) (same). In fact, judges in our district, including Judge Boyle, have imposed probation for bank fraud. *See, e.g., United States v. Moore*, 5:02-CR-236, D.E. 31 (2003) (J. Boyle); *United States v. Reid*, 5:03-CR-128, D.E. 101 (2004); *United States v. Ezell*, 5:97-CR-160, D.E. 13 (1998); *United States v. Erwin*, 4:97-CR-8, D.E. 9 (1997); *United*

*States v. Hill*, 5:96-CR-120, D.E. 8 (1996); *United States v. Hicks*, 5:96-CR-119, D.E. 9 (1996); *United States v. Locus*, 5:95-CR-111, D.E. 5 (1995).

Furthermore, Griffin cannot demonstrate that her substantial rights were affected. Even if she knew that the law required at least a sentence of one day or time served, it is unlikely this would have affected her decision in the case. Furthermore, we note that the PSR provided Griffin notice that she was ineligible for probation. D.E. 338 at ¶¶ 110–11. If that were a problem for her, she should have moved to withdraw then, as opposed to waiting to see what sort of a sentence the district court would impose. In any event, this claim is not likely to prevail on appeal and should not provide a basis for delaying her self-report date.

### 3. Griffin's appeal waiver encompasses her argument related to the procedural reasonableness of her sentence.

The final appellate issue that Griffin identifies is the procedural reasonableness of her sentence, specifically the adequacy of the court's explanation. Mem. Br. at 8–9. This claim is unlikely to result in reversal or a lesser sentence because the government will move to dismiss it as barred by the appellate waiver. As already noted, Griffin received a favorable plea agreement wherein the government agreed to dismiss an aggravated identity theft count that carried a mandatory, consecutive two-year sentence. In exchange, Griffin waived "the right to appeal the conviction and whatever sentence is imposed on any ground, . . . excepting an appeal . . . based upon grounds of ineffective

assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea." D.E. 275 at 1. The district court told Griffin during the Rule 11 hearing that her plea agreement included a waiver of her appellate rights, and she confirmed she was aware of that. *See* D.E. 307 at 5–6. The waiver is knowing, voluntary, and encompasses arguments about the explanation of Griffin's within-guidelines sentence. *See United States v. Cohen*, 459 F.3d 490, 494 (4th Cir. 2006) (stating that this Court will enforce an appellate waiver "if the waiver is valid and the issue sought to be appealed falls within the scope of the waiver").

### 4. Assuming the "exceptional reasons" provision in § 3145(c) applies to Griffin, she has not shown that the BOP is unable or unwilling to appropriately manage her medical treatment.

Griffin argues that her rheumatoid arthritis and other health issues, coupled with the COVID-19 pandemic, are exceptional circumstances demonstrating that her detention pending appeal is not appropriate. Mem. Br. at 2, 11–14.

As an initial matter, the "exceptional reasons" provision in § 3145(c) does not apply here. In relevant part, § 3145(c) provides:

> A person subject to detention pursuant to section . . .
> 3143(b)(2), and who meets the conditions of release set
> forth in . . . section 3143(b)(1), may be ordered released,
> under appropriate conditions, by the judicial officer, if it
> is clearly shown that there are exceptional reasons why
> such person's detention would not be appropriate.

By its terms, the provision applies only to defendants subject to detention under § 3143(b)(2), which covers defendants "who ha[ve] been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142." Those cross-referenced provisions, in turn, cover crimes of violence, violations of § 1591 (sex trafficking of children), certain offenses listed in § 2332b(g)(5)(B) (federal terrorism offenses), offenses for which the maximum sentence is life imprisonment or death, and certain controlled substances offenses. Griffin was not convicted of any of the crimes "described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142." She therefore is not "subject to detention pursuant to section . . . 3143(b)(2)," and § 3145(c) has no bearing on her case.

At any rate, even if it applied here, § 3145(c)'s "exceptional reasons" provision only comes into play once the gatekeeping criteria of § 3143(b)(1) are first satisfied. The text explicitly states that the defendant must still "meet[] the conditions of release set forth in section 3143(a)(1) or (b)(1)." Subsection (b)(1) requires raising a substantial question likely to result in reversal, a new trial, or a significantly shortened sentence, *and* clear and convincing evidence that the defendant does not present a flight risk or a danger to the community. Subsection (a)(1) only allows release "in accordance with section 3142(b) or (c)."[3] As already noted, Griffin's appeal does not raise a substantial question likely to result in reversal, a new trial, or significantly shorter sentence.

---

[3]    Subsection (c) involves appeals by the government.

In any event, the district court was aware of the COVID-19 pandemic and Griffin's health issues when it sentenced her in October 2021. *See* D.E. 448 at 4; D.E. 338 at ¶ 81. Griffin knew in October 2021 that she was to report for her custodial sentence in January 2022, giving her ample time to make appropriate medical arrangements.

It appears that Griffin's filing with this Court is the first time she argues that her health conditions and the COVID-19 pandemic provide an exceptional reason to grant her release while her appeal is pending.[4] Mem. B.at 11–14. She also presents this Court a letter from her doctor, without explanation as to why she did not obtain this information earlier when asking the district court to grant her release pending appeal. *See* Mem. Br. at 13; Doc. No. 5-2 (letter from Dr. McLendon dated 2/4/2022). Griffin has not shown that the Bureau of Prisons will be unable to meet her healthcare needs. While she may prefer to continue living at home and seeing her personal physicians, Griffin has been punished to a term of imprisonment, is unlikely to prevail on any of her appellate arguments, and should be required to report to custody as ordered by the district court.

---

[4] In the district court, Griffin briefly referred to her health conditions to support the contention that she is not a risk of flight or danger to the community. *See* D.E. 445 at 4.

## Conclusion

For the foregoing reasons, the district court's order denying Griffin's motion for release pending appeal should be affirmed.

Respectfully submitted this 14th day of February, 2022.

MICHAEL F. EASLEY, JR.
*United States Attorney*

By:  */s/ Kristine L. Fritz*
KRISTINE L. FRITZ
*Assistant United States Attorney*
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone: (919) 856-4530

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, I hereby certify that this document meets the type-volume limits of Rules 27(d), 35(b)(2), and/or 40(b) because, exclusive of the portions of the document exempted by Rule 32(f), this document contains <u>4508</u> words.

   *(Filings are not to exceed 5,200 words for a motion or response and 2,600 words for a reply, pursuant to Rule 27(d), or 3,900 words for a petition for panel rehearing or rehearing en banc, pursuant to Rules 35(b)(2) and/or 40(b)).*

2.    Further, this document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in Microsoft Word 2016 using fourteen-point *Calisto MT*, a proportional-width typeface.

*/s/ Kristine L. Fritz*
KRISTINE L. FRITZ
*Assistant United States Attorney*